# E<span style="font-variant:small-caps">xhibit</span> A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------X
JESSE LANGEL,

      PLAINTIFF,

-against-

CHIPOTLE MEXICAN GRILL, INC.,

      DEFENDANT.
-------------------------------------------------------X

Index No.:

**SUMMONS WITH NOTICE**

The basis of venue is the plaintiff's residence.

Plaintiff's residence: 105 Lexington Avenue, 5B, New York, NY 10016.

To the Person Named as Defendant above:

  **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer or if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff at the address set forth below, and to do so within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded below.

  **YOU ARE HEREBY NOTIFIED THAT** should you fail to appear, a judgment will be entered against you by default for the relief demanded below.

Note: The law or rules of court provide that:

  a) If this summons us served by its delivery to you or (for a corporation) an agent authorized to receive service personally within the State of New York, you must answer within 20 days after such service; or
  b) If this summons is served otherwise than a designated in subdivision (a) above, you are allowed 30 days to answer after the proof of service is filed with the clerk of the court.
  c) You are required to file a copy of your appearance together with proof of service with the clerk of the court of the court in which the action is brought within ten days of the service of the appearance.

**TAKE NOTICE** that the object of this action and the relief sought is to recover money damages, injunctive relief, and reasonable attorney's fees for the defendant's violations of

NYGBL § 349 (Deceptive acts and practices unlawful), NYGBL § 350 (False advertising), and negligence for the total sum of $100,000.00, together with the costs of this action.

On October 19, 2021 at approximately 4:45 p.m., the plaintiff entered the defendant's chain restaurant located at 234 5th Avenue, New York, NY 10001. The plaintiff purchased a burrito containing black beans, brown rice, Sofritas (tofu made from soybean curds), fajita vegetables, Tomatillo-Red Chili Salsa, and lettuce ("the product"). The plaintiff paid $10.34.

The plaintiff purchased the same product (with Sofritas) from the defendant on the day before, October 18, 2021. The plaintiff purchased the same product (with Sofritas) from the defendant on September 22, 2021, September 21, 2021, September 7, 2021, and September 2, 2021.

Over the years, the plaintiff has consumed various products prepared by the defendant, including prepared meat products. For many years, the plaintiff has been exposed to, and influenced by, the defendant's marketing messaging and its advertising claims. The plaintiff has previously seen and absorbed the defendant's "raised responsibly" messaging before October 19, 2021. In and around September 2021 and October of 2021, however, the plaintiff has developed a stronger sense of compassion for animals, and has gained more knowledge, insight, and awareness of the health consequences of meat consumption, particularly meat-overconsumption.

The advertising claim forming the basis of this action is the defendant's advertising claim that its pork is "Raised Responsibly." (See Exhibit 1, attached). The plaintiff was part of a particular group, targeted by the defendant, who would likely be affected by that advertising claim, which is why the defendant made the claim to the plaintiff. As such, the advertising claim must be examined from the perspective of a reasonable member of the targeted group that contained the plaintiff. In this Summons with Notice, the phrase "advertising claim" is used synonymously with "claim," "representation" and "misrepresentation."

The above advertising claim, viewed separately, or coupled with other certain advertising claims made by the defendant related to animal welfare are false, misleading, deceptive, negligent, and actionable on the following grounds.

A.  **The Defendant's Express and Implied Advertising Claims are False, Contradictory, Deceptive, and Misleading.**

On the defendant's website,[1] (See Exhibit 2, attached—a screenshot taken on October 20, 2021), the defendant asserts, among other things: "158.4 Million Pounds of Certified Humane™[sic] Pork, Chicken and Beef. However, on October 20, 2021, the plaintiff spoke to a staff member at Certified Humane®, a 501(c) non-profit organization, who denied the defendant's claims that it is Certified Humane™; or that Certified Humane® made any inspection at any Chipotle location, or made any inspection at the defendant's suppliers' location(s) to sufficient to justify, support, or verify the defendant's claim that it used "158.4 MILLION pounds of Certified Humane™ Pork, Chicken, and Beef."

---

[1] https://www.chipotle.com/about-us/sustainability

2

Furthermore, the defendant's publicly-filed 2019 Form 10K *omits* any representation that its meats are Certified Humane™ or Certified Humane®. An immediate issue of fact is why the defendant makes such specific, measurable claims on its website that do not appear in its 10K. A reasonable inference would be that the defendant elected not to make any such claims on its 10K because such a claim would represent a false one, and could amount to perjury under federal law. If this inference is even partially true, the defendant is committing a massive consumer fraud.

Upon information and belief, the defendant fails to adequately define or substantiate the perceptively measurable claims that its animals (including pigs) are "raised responsibly." The claim "raised responsibly" contains targeted, express claims that are aimed at particular consumers who have particular beliefs and values, especially with regard to animal welfare, which is a growing concern. Misleading advertising claims such as "raised responsibly" dupes consumers into believing they are supporting a company whose practices align with their values.

Since the defendant uses "Animal Welfare" as one of its most-prominent marketing inducements throughout its marketing strategy, reasonable consumers would believe that the defendant is able to measure, substantiate, and verify that *all* (substantially all) of the animals raised or sourced were "Responsibly Raised." It cannot.

Upon information and belief, the defendant or its producers lack adequate third-party certification as to the humaneness of their animal treatment. The defendant vaguely uses the word "responsibly" to avoid accountability on the most sensible interpretation of that word (humaneness). The defendant's marketing materials and advertising strategies noticeably omit reference to the slaughtering practices of the animals that it allegedly "raises" or "sources." It is misleading and deceptive for the defendant to omit reference to the slaughtering process anywhere since it represents the critical, last step of the animal-raising process, particularly the point where the animals suffer the most stress and incur the most brutal injuries. Since the defendant's commercial advertising claims are false and misleading, they deserve no First-Amendment protection.

The advertising claim "responsibly raised" implies that the defendant either itself raises the animals, or actively participates in the raising (and slaughtering) of the animals it uses in its products. In its various marketing channels, the defendant sometimes uses the claim "responsibly raised" (See Exhibit 1) but uses "responsibly sourced" in other advertising (website). That different phrasing is confusing and misleading. Upon information and belief, the bag, which contains the more inaccurate claims, has the most tangible connection with the purchasing consumer raising the likelihood that it will be viewed more and considered more by the consuming plaintiff.

Over the years, the plaintiff was consciously and subconsciously influenced by the defendant's advertising, marketing, and its bag-advertising practices ("conditioning"), which contain the false and misleading claims. The plaintiff's attempts at sanitizing reality with its deceptive advertising amounts to "humanewashing," explained below.

"Humanewashing" attempts to use false and misleading advertising directed at consumers who have some degree of concern about animal welfare, particularly the humaneness of the

treatment it receives pre-slaughter and during slaughter. The concept is similar to "greenwashing" (creating the false impression through misleading advertising that a company's products are more environmentally sound). Humanewashing attempts to divert, distract, and detach consumers from the realities of modern-day meat agriculture and farming. Since consumers are becoming increasingly aware of those realities—and demonstrating more awareness and compassion in their purchasing choices—companies like the defendant attempt to paint a different picture of the lives of the animals than what occurs in real life.

Although the defendant does visibly attempt to improve some of the conditions experienced by animals raised for slaughter (see footnote 2), those attempts do not legally justify its advertising claims as alleged herein. Upon information and belief, the defendant's efforts and improvements do not prove the express claims and implied claims with measurable, reliable evidence as required under law.

The defendant is a for-profit, publicly traded company. The evidence will show that its practices, including its "humanewashing" as alleged herein, are driven by sales and profit. The defendant is aware of studies demonstrating that consumers will pay more for corporate promises to improve animal welfare.

For example:

When asked, "what is the most you are willing to pay for high quality, humanely raised products," 34% of respondents to a 2013 survey conducted by American Humane said 10-20% more, while 28% of respondents said they would pay 20-30% more. —Humane Heartland Farm Animal Welfare Survey, American Humane Association, 2013.

**B.     The Defendant Changes its Marketing Message from "Responsibly Raised" to "Conventionally Raised" Depending on Market Conditions.**

On page 2 of the defendant's 2019 Annual Report (10K):

"In all of our Chipotle restaurants, we endeavor to serve only meats that are raised in accordance with criteria we have established in an effort to improve sustainability and promote animal welfare, and without the use of non-therapeutic antibiotics or added hormones. We brand these meats as "Responsibly Raised®." One of our primary goals is for all of Chipotle restaurants to serve meats raised to our standards, but we have and expect to continue to face challenges in doing so. For example, some of our restaurants periodically serve *conventionally raised* chicken or beef due to *supply constraints* for our Responsibly Raised brand meats or stop serving one or more menu items due to additional supply constraints. When we become aware of such an issue, we clearly and specifically disclose this *temporary change on signage* in each affected restaurant so that guests can adjust their orders if they choose to do so." [emphasis added].

In other words, after years of indoctrinating the consuming public with its widespread marketing messaging ("conditioning" the market) about holding suppliers to its self-created animal-welfare standards, it simply pulls and adjusts that messaging for the time period in which shortages occur. During such shortages, it serves "conventionally raised" meat while allegedly notifying its consumers, by signage, of the contradictory messaging. By the time the typical consumer sees this change from "responsibly raised" meat to "conventionally raised," the damage is done. The consumer was already cajoled into the store to consume the defendant's meat products—whether raised "responsibly" or "conventionally." The defendant does not meaningfully define "conventionally raised."

The claim "raised responsibly" also contains numerous implied claims subject to various interpretations, all of which the defendant must be able to substantiate. For example, "raised responsibly" could reasonably infer to consumers that its animal-raising practices are ecologically sound. That interpretation is supported by the messaging inherent in the defendant's marketing tone, concepts, images, fonts, language, promotions and overall market positioning. The defendant is legally required to substantiate all reasonable inferences with objective, admissible evidence.

The defendant's advertising claims are misleading to New York consumers in a material way because they induce consumer behavior by manipulating their beliefs to induce sales for profit.

Additionally, by misbranding its food products using false and misleading advertising, the defendant induced, directly and indirectly, the sale of the products, including the product in this action. By doing so, the defendant violated Agric. & Mkts. Law § 202-a(1), a statutory standard of care that the plaintiff will use in support of its negligence cause of action.

In the context of Animal Welfare, in which the defendant holds itself out as being a market leader,[2] under the law, it is believed that the defendant's "Raised Responsibly" claim represents a purportedly "proven clam" that requires *it*—versus a challenging plaintiff—to prove and substantiate the truth of that statement, especially since it possesses all measurable studies, surveys, and evidence inherent in its business practices.

C.  **The Defendant's Deceptive Practices and False Advertising are Directed Entirely at the Consuming Public, are Misleading in a Material Way, and Caused Injury.**

For many years, the plaintiff has been generally aware of the defendant's marketing messaging, which distinguishes itself from other meat-product retailers. Over those years, the plaintiff, as a consumer, has been susceptible to the defendant's marketing-indoctrination strategy. As a member of the consuming public, the plaintiff generally believed and trusted the

---

[2] In its 10K, within the section titled, "Sustainability and Corporate Responsibility," the defendant points to having received an A+ by The Humane Society of the United States (as of January 2, 2020). The "award" references only the defendant's use of cage-free eggs for chickens, elimination of gestation crates for pigs, policy for poultry, and a plant-based option on its menu. These facts, assuming they are true, do not justify the defendant's advertising claims as alleged herein.

defendant's advertising claims given the defendant's size, scope, influence, public corporate structure, and market positioning. The reasonable consumer, including the plaintiff, would reasonably believe that publicly traded companies like the defendant are held to a higher standard in the area of consumer advertising and corporate responsibility. The defendant's advertising claims are likely to mislead the reasonable person acting reasonably under the circumstances. The plaintiff, a well-educated member of society, who was in a group targeted by the defendant, was reasonably misled by the defendant's advertising claims.

In the context of its business practices as alleged herein, the defendant's products have been linked to at least 12 pathogenic outbreaks while the country battles multiple public-health crises, including heart disease, cancer, and diabetes.

### D.     Preemptive Law is Inapplicable.

The defendant may not escape liability on preemption grounds. The plaintiff's claims are not premised on an ingredient or labeling challenge that would come within the purview of the PPIA, FMIA, USDA, or any other law or Act. Furthermore, upon information and belief, any documentation or substantiation that the defendant, or its suppliers, have submitted to the Food Safety and Inspection Services (FSIS) in support of their animal-welfare representations were deficient, misleading, and materially false. Any purported pre-approval by the FSIS represented nonbinding guidance and does not preempt the plaintiff's claims herein pursuant to governing law of the United Stated Supreme Court and governing law of the Second Circuit of the United States. Upon information and belief, Congress has not expressly or impliedly expressed its intent to exclusively occupy the area forming the basis of the plaintiff's claims, or impair New York State's policing power, especially as to the civil remedies sought in this action. Nor is there any conflict between the plaintiff's claims and all applicable federal laws and acts that would deprive the plaintiff from bringing this action.

### E.     Injury and Damages

The point of emotional impact and injury occurred when the plaintiff read, and was confronted by, Exhibit 1. At that moment, the plaintiff gained sudden insight into the defendant's acts and practices. Following decades of exposure to the defendant's advertising representations, the plaintiff was suddenly caused to feel shock, guilt, shame, anger, betrayal, and outrage, which has led to prolonged sleep disturbances, difficulty concentrating, irritation, and disruption to his emotional well-being. But-for the defendant's acts and practices, the plaintiff's injuries would not have occurred.

The amounts that the plaintiff paid to the defendant for the product(s), and premiums paid above what complying, ethical competitors charge without such advertising, represents financial injuries under the theories alleged, including negligence. Moreover, the plaintiff, an actively practicing attorney, is not tending to the needs of his law practice while he researches, investigates, and drafts litigation documents related to this action *pro se*. The plaintiff respectfully requests the recovery of reasonable attorneys' fees related to that lost time under NYGBL § 349(h).

### F. Injunctive Relief Warranted under NYGBL § 349(h)

The New York State legislature amended both NYGBL §§ 349 and 350 to add a private right of action for money damages, *injunctive relief* and reasonable attorneys' fees.

The statute reads:

General Business Law § 349   Deceptive acts and practices unlawful

...

**(h)** In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

The defendant operates approximately 181 restaurants in New York. In those restaurants, it uses the deceptive advertising claim "Raised Responsibly" on its ubiquitous, brown bags that the plaintiff now consciously witnesses around New York City. Without enjoining the defendant from using that deceptive claim on those bags, millions of New Yorkers will continue to be irreparably deceived and misled on matters of important public interest — animal welfare, public health, and ecological soundness. The advertising claim will also continue to mislead consumers—like it did the plaintiff— into believing they are supporting a company whose practices align with their values. Each time the plaintiff sees an unwitting consumer carry that bag with that advertising claim, he experiences a repeated emotional insult consistent with what is described above. The defendant's acts and practices are recurring, threatening, and imminent. If allowed to continue, the defendant's misrepresentation will continue to reduce transparency and influence consumer decision in ways that are contrary to public interest.

**YOU ARE HEREBY NOTIFIED THAT** should you fail to appear, a judgment will be entered against you by default for money damages, injunctive relief, and reasonable attorney's fees for the defendant's violations of NYGBL § 349 (Deceptive acts and practices unlawful), NYGBL § 350 (False advertising), and negligence for the total sum of $100,000.00, together with the costs of this action.

Dated: October 24, 2021

Defendant's addresses:

**Chipotle Mexican Grill, Inc.**

Jesse Langel, Esq.
*Pro se*
30 Wall Street, 8th Floor
New York, NY 10005
646-290-5600

7

234 5th Avenue
New York, NY 10001

C/O Corporation Service Company
80 State Street
Albany, NY 12207-2503

## Exhibit 1



# Exhibit 2

